WICHITA ROYALTY CO. ET AL. v. CITY NATIONAL
BANK OF WICHITA FALLS ET AL.

No. 314.   Argued January 6, 1939.—Decided January 30, 1939.

104

*Messrs. Ray Bland* and *Guy Rogers,* with whom *Mr. J. T. Montgomery* was on the brief; for petitioners.

*Messrs. Leslie Humphrey* and *T. R. Boone* for respondents.

MR. JUSTICE STONE delivered the opinion of the Court.

We are asked to determine whether the Circuit Court of Appeals correctly applied the law of Texas in a suit upon a cause of action arising in that state between a Texas association acting under a declaration of trust and a national bank doing business there.

The proceedings in the present litigation have been extensive and complex but only those relevant to the issue presented here need be detailed. Respondent, the City National Bank of Wichita Falls, brought suit in a Texas court against the association, petitioner here, and its trustee to recover on two promissory notes, one made and the other endorsed by petitioner. They filed a cross-action against the bank, impleading its vice-president, to recover a deposit balance in favor of petitioner on the ground that the bank had improperly charged the account with drafts drawn upon it by Peckham, a former trustee of petitioner, or at his direction, and that Peckham, in breach of trust, had used the proceeds in part to pay his own debts to the bank or its vice-president, and in part for other expenditures for his own benefit.

The misappropriations were alleged to have been effected by the withdrawal of funds from the deposit account by a large number of checks signed by Peckham as trustee, or at his direction, and payable to his own order or to the bank. Some were alleged to have been credited by the bank in payment of the trustee's personal debts and some to his personal account with the bank, from

which he later withdrew a substantial part of the amounts so deposited and used it for his own purposes. Petitioner contended that some of the funds thus withdrawn from his personal account were used in payment of his personal debts to the bank or its vice-president and that the bank and its vice-president, because of the transactions with the bank and the form of the checks, had notice of and had participated in the breaches of trust or some of them and to that extent were liable for all the misappropriations.

The trial court directed a verdict and entered judgment in favor of the bank on the notes and against petitioner on its cross-action. On appeal the Supreme Court of Texas reversed and remanded the cause for a new trial upon such further evidence as might be adduced, and in its opinion stated the applicable principles of law for the guidance of the trial court. 127 Tex. 158, 184. Meanwhile, the bank had closed its doors. Its assets were taken over by respondent, the newly organized City National Bank in Wichita Falls, which assumed the liabilities of the old bank.

On the remand the directors and the liquidating agent of the old bank and the new bank were made parties defendant to the cross-action by petitioner association, and the pleadings were amended so as to charge the new individual defendants with responsibility for the liability originally asserted against the old bank, and also to charge the new bank by reason of its acquisition of the assets and its assumption of the liabilities of the old one.

The cause was then removed to the federal District Court for northern Texas, under § 28 of the Judicial Code, 28 U. S. C. § 71. On the trial of the cause there, in the course of which voluminous evidence was taken before a commissioner, the District Court denied recovery to the old bank on the promissory notes and to the association upon its claim against the old bank and the various other

parties sought to be charged with its liability, but directed that jurisdiction be retained to wind up the affairs of the insolvent bank. § 24 (16) of the Judicial . Code, 28 U. S. C. § 41 (16); *International Trust Co.* v. *Weeks*, 203 U. S. 364.

The Court of Appeals for the Fifth Circuit set aside the decree because of the failure of the trial court to make findings of fact and state conclusions of law as required by Equity Rule 70½. 95 F. 2d 671. In remanding the cause the court stated, for the guidance of the trial court, principles of law which it thought applicable to the cause of action asserted by the association. These were at variance with those which the Texas Supreme Court in its earlier remand of the case had declared to be controlling. It rejected in part the rulings of the state court because it thought that the questions presented were of general commercial law, with respect to which the federal courts were not bound by local decisions, and that the rules which the Texas courts had adopted were not favored by the decisions of the federal and some state courts.

In its opinion denying a second petition for rehearing, 97 F. 2d 249, presented after our decision in *Erie Railroad Co.* v. *Tompkins*, 304 U. S. 64, the court disclaimed any purpose not to follow the law of Texas, but reaffirmed its instructions for the trial court on the ground that they were in harmony with the opinion of the Supreme Court of Texas in a later case, *Quanah, Acme & Pacific Ry. Co.* v. *Wichita State Bank & Trust Co.*, 127 Tex. 407; 93 S. W. 2d 701, which the Court of Appeals thought had modified and restricted the rules announced by the state court on the appeal in this case. We granted certiorari, 305 U. S. 587, on a petition urging that it was the duty of the Court of Appeals to apply the law as defined by the Supreme Court of Texas on the first ap-

peal, the question, concerning the relations of the federal and state courts, being of public importance.

In departing from the "law of the case," as announced by the state court, and applying a different rule, the court below correctly stated that by reason of the removal it had been substituted for the Texas Supreme Court as the appropriate court of appeal and that it was its duty to apply the Texas law as the Texas court would have declared and applied it on a second appeal if the cause had not been removed. It was the duty of the federal court to apply the law of Texas as declared by its highest court. *Eric Railroad Co.* v. *Tompkins, supra.* But the case on the first appeal had not become *res judicata.* *Remington* v. *Central Pacific R. Co.,* 198 U. S. 95, 99, 100; *Messenger* v. *Anderson,* 225 U. S. 436, 444; *Diaz* v. *Patterson,* 263 U. S. 399, 402; *Seagraves* v. *Wallace,* 69 F. 2d 163, 164, 165. And since the Supreme Court of Texas holds itself free upon reconsideration to modify or recede from its own opinions, see *Quanah, Acme & Pacific Ry. Co.* v. *Wichita State Bank & Trust Co., supra,* superseding 89 S. W. 2d 385, the court below, in applying the local law, was likewise free to depart from the earlier rulings to the extent that examination of the later opinions of the Texas Supreme Court showed that it had modified its opinion on the first appeal. Hence the only question for our decision is whether the Court of Appeals rightly concluded that the state court had thus altered its opinion.

The Court of Appeals held, as did the Texas Supreme Court, that the old bank, so far as it had accepted payment of the trustee's personal debts from his personal account, with notice that the payments had their source in trust funds, had become liable for tne trustee's misappropriations by reason of its participation in them. But the two courts differed with respect to the liability of the bank for trust funds commingled with the trustee's per-

sonal account and later withdrawn and used for his personal benefit. The state court had ruled that the bank was responsible for all such misappropriations as took place after it had knowingly accepted trust funds in payment of the trustee's personal debts. Pointing out that there was evidence of such transactions, it declared, 127 Tex. 158, 174, 175: "the Bank, after being charged with knowledge of Peckham's dishonest dealings, continued to credit Peckham's personal account with checks drawn on the Trust account, and persisted in its course of dealings with respect to the two accounts. Having incurred the burden of ascertaining whether subsequent expenditures made by the Trustee from the commingled funds were for authorized Trust purposes, it cannot effectively complain of the weight of that burden." And it concluded, 127 Tex. 158, 182: "It is apparent from what has been stated that the amount of the Bank's liability is the difference between the total amount of the deposits [of trust moneys] for which Peckham's personal account received credit after he began commingling Trust funds with his own on October 8, 1925, and the total amount of withdrawals therefrom which the Bank may show were used for authorized Trust purposes." [1]

The court below, relying on the decision of the Texas Supreme Court in the later *Quanah* case, declined to accept this conclusion. Instead it declared that the bank was not chargeable with notice of the trustee's misappropriations through withdrawal and use of trust funds deposited in his personal account by the bare fact of its knowledge that the trustee had previously paid his per-

---

[1] The opinion assumed that all the funds in the personal account on October 8, 1925, were trust funds and that on November 17, 1925, the trustee paid his personal indebtedness to the bank from those funds. 127 Tex. 158, 168. In its opinion on the motion for rehearing the court stated that these assumptions were not to be taken as foreclosing proof of the facts upon the new trial. 127 Tex. 158, 184.

sonal debts to the bank with trust funds passed through his personal account. But the *Quanah* case presented a different question from that considered by the Texas court in the present case. The former involved no question of actual knowledge and participation by the bank in the misappropriation of trust funds. There an officer of a corporation deposited its funds in his personal account in a bank with which the corporation had no account. The bank had knowledge that the funds or some of them belonged to the corporation and not to the officer personally, but it paid them out on the order of the officer, who appropriated them to his own use. In holding that the bank was not liable, the court adopted the rule, for which it found support in the decisions of other courts and in text writers, that the bank in such circumstances is not liable for the misappropriation. The court was at pains to point out that a different rule would have been applicable if, before the withdrawals from the account, "the bank [had] actively participated in the spoliation of the trust fund and knowingly received a part of the fund to itself in payment of the trustee's individual debt to it," citing its opinion in the present case. 127 Tex. 407, 421, 422.

Even if we thought this distinction not well taken, nothing requires the state courts to adopt the rule which the federal or other courts may believe to be the better one, or to be consistent in their decisions if they do not choose to be. That the distinction taken in the *Quanah* case was advisedly made and was not intended to modify the rule announced by the state court on the appeal in this case, appears from the opinions in both cases. On the same day that the final opinion in the *Quanah* case, from which we have quoted, was delivered by the Texas Supreme Court, it denied a petition for rehearing in the present case, with an opinion, 127 Tex. 184, which left undisturbed the principles announced in the first decision.

In its final opinion in the *Quanah* case it said: ". . . we have again carefully reviewed the opinion in the *Wichita Royalty Co. et al.* v. *City National Bank of Wichita Falls* case, . . . decided by this court on the same day the case at bar was originally decided. . . . We are satisfied with our opinion in the *Wichita Royalty Company* case as explained by our opinion on rehearing in that case." 127 Tex. 407, 421, 422. As there is no contention that the opinion of the Texas court in this case has in any other respect been modified by the *Quanah* or any other case in the Texas Supreme Court, we do not discuss other parts of the opinion below which it is argued fail to follow the opinion of the state court.

We think that the opinion of the Supreme Court of Texas in the present case has not been modified by the *Quanah* case and must be accepted as stating the law of Texas; and that it affords the appropriate guide for the District Court so far as it may be applicable to the facts which have been developed on the trial there. As the court below properly directed the remand for a statement of findings and conclusions of law under the equity rule, the decree will be affirmed but the proceedings in the District Court will be in conformity to this opinion.

*Affirmed.*