**INLAND FREIGHT LINES v. UNITED STATES.**

**No. 4214.**

United States Court of Appeals
Tenth Circuit.

Aug. 18, 1951.

Rehearing Denied Oct. 3, 1951.

314

Richard L. Bird, Jr., Salt Lake City, Utah (Dan. S. Bushnell, Salt. Lake City, Utah, on the brief), for appellant.

George W. Howard, Special Asst., Washington, D. C. (Scott M. Matheson, U. S. Atty. and O. K. Clay, Asst. U. S. Atty., Salt Lake City, Utah, on the brief), for appellee.

Before BRATTON, MURRAH and PICKETT, Circuit Judges.

BRATTON, Circuit Judge.

Title 49, section 304(a), United States Code Annotated, empowers the Interstate Commerce Commission to require motor carriers subject to the provisions of the Interstate Commerce Act, as amended, to keep, maintain, and preserve uniform systems of accounts, records, and reports; and section 322(g) makes it a misdemeanor for a carrier to knowingly and wilfully prepare, keep, and preserve false records in connection with the operation of its business. Regulation 191.5, promulgated by the Commission, provides in presently material part that each carrier shall require that a driver's log in duplicate shall be kept by each driver in his employ who operates a motor vehicle engaged in transportation in interstate commerce, and that entries in the log shall show the place of origin and destination of the trip, the times of reporting for duty and going off duty, the periods of driving and operating and other work, and any other information found desirable.

An information containing ten counts was filed in the United States Court for Utah against Inland Freight Lines, a common carrier engaged in the business of transporting property in interstate commerce by motor vehicle. The first count charged that on October 3, 1948, the company had in its employ as a driver Robert Harrison, who operated a motor vehicle engaged in such transporation between Salt Lake City, Utah, and Oakland, California; that the company aided, abetted, counseled, commanded, induced, and procured Harrison, at Salt Lake City, to prepare and keep, and Harrison did prepare and keep a driver's log in connection with such operation and transportation containing false entries, in that such driver entered on such date that he was off duty from 12:01 A.M. to 6 A.M., was driving from 6 A.M. until 1:30 P.M., and was in a sleeper berth from 3 P.M. until 11 P.M., when in truth and in fact, as such driver and the defendant well knew, from 8 A.M. until 3 P.M., he was performing duties other than driving for six hours, none of which time was reported in the log, whereby the defendant did knowingly and wilfully falsify such report, record, and memorandum, to-wit: driver's log, prescribed by the Interstate Commerce Commission. The other counts were similar in substance, differing only in respect to date, name of driver, point of origin and point of destination of trip, and nature of false entries in the driver's log. The court submitted to the jury the charges contained in counts 2, 6, 7, 9, and 10. The company was found guilty on each of such counts and the sen-

tence imposed was a fine of $1,000 on each count.

While no motion to dismiss the appeal was filed, the United States contends that this court is without jurisdiction of the cause for the reason that the notice of appeal was filed too late. The verdict of the jury was returned on October 3, 1950. A motion for new trial was filed on October 6. An order denying the motion for new trial was entered on October 27. Judgment was entered imposing sentence on November 3. And the notice of appeal was filed on November 10. The notice of appeal recited the date of trial, the dismissal of certain counts in the information, the denial of the motion for a directed verdict, the return of the verdict, the filing of the motion for new trial, the denial of such motion, and the tender of a personal surety bond in support of an application for stay of execution. After such recitals, the notice stated that the company appealed "from the above stated judgment, and all parts thereof, and from the denial of motion for new trial and motion for directed verdict." The order denying the motion for a directed verdict and the order denying the motion for a new trial were not orders from which an independent appeal would lie. The final judgment was the only action of the court from which an appeal could be perfected. The notice contained much surplusage which did not serve any useful purpose. But a critical reading of it makes it plain that the company sought among other things a review of the final judgment. And having been filed within ten days after entry of the final judgment, the notice was sufficient to perfect an appeal from such judgment. Wilson v. Southern Railway Co., 5 Cir., 147 F.2d 165; Porter v. Borden's Dairy Delivery Co., 9 Cir., 156 F.2d 798.

Coming to the merits, the company contends that the evidence was insufficient to support the verdict and judgment. The argument in support of the contention is that the company cannot be held responsible for the mistakes or falsifications of its drivers in the preparation of the logs unless it had actual knowledge of such mistakes or falsifications and wilfully allowed them to become part of its records, and that the evidence failed to establish such essential elements. Evidence was adduced which tended to show these facts. Drivers employed by the company prepared and filed with it logs and also trip reports. These documents were filed currently and they were kept, maintained, and preserved as records of the company. In each instance having materiality here, a wide discrepancy existed between the log and the report. For instance, in respect to the charge contained in the second count of the information, the log showed that on the critical day the driver was off duty twenty-four hours. The trip report for that day disclosed a trip from Elko, Nevada, to Salt Lake City, Utah, the time of departure, the time of arrival, and the amount earned. The driver testified that he prepared both the log and the report, and he further testified that while he could not remember that far back he would not have made the report unless he made the trip which it disclosed. In respect to the charge contained in each of the other counts on which the company was found guilty, fairly comparable inconsistencies existed between the log and the report, and the testimony indicated that the log was not correct. The logs and the reports did not find their way into the hands of a single agent or representative of the company after they were filed. No single agent or representative in the offices of the company had actual knowledge of their conflicts and falsities. But one agent or representative had knowledge of the material contents of the logs and another had knowledge of the material contents of the reports. And the knowledge of both agents or representatives was attributed to the company. New York Central and Hudson River Railroad Co. v. United States, 212 U.S. 481, 29 S.Ct. 304, 53 L.Ed. 613. Wilfulness is a question of fact. But direct proof of its existence is not essential. It may be inferred from acts, conduct, and circumstances. And the inference may be drawn from a combination of acts, conduct, and circumstances. Spies v. United

States, 317 U.S. 492, 63 S.Ct. 364, 87 L.Ed. 418. It was incumbent upon the Government to show that the company knowingly and wilfully kept, maintained, and preserved false logs as part of its records, but the evidence together with the inferences fairly to be drawn from it was sufficient to take the case to the jury under appropriate instructions of the court.

Certain parts of the instructions to the jury are challenged. The court instructed the jury that the company should be convicted if it "accepted such false logs knowing them to be false, or accepted them without investigation as to their falsity or that the falsity thereof would have been discovered by the defendant if it had performed its duty of inspection * * *" After the jury had deliberated for some time they returned into court and requested further instructions as to whether negligence on the part of the company, or failure on their part to check documents could be defined as knowingly and wilfully committing the act. In response to the request, the court repeated verbatim to the jury the part of the original instructions to which reference has been made. The instruction was in the disjunctive. Under it the jury was warranted in returning a verdict of guilty if the company accepted false logs, knowing them to be false. Under it a verdict finding the company guilty was required if it accepted false logs without investigation as to their falsity. And under it a verdict of guilty was justified if the falsity of the logs would have been discovered had the company performed its duty of inspection. The primary substance of the instruction was that mere negligence on the part of the company in accepting the false logs without investigation as to their falsity was sufficient to warrant a conviction. It entirely omitted wilfulness in keeping the false logs as an essential ingredient of the offense. In order to warrant a conviction under the statute the false logs must have been knowingly and wilfully kept and preserved as records of the company. And willful or wilfully as used means the keeping of them deliberately, voluntarily, or

intentionally as distinguished from inadvertence or ordinary negligence. Nabob Oil Co. v. United States, 10 Cir., 190 F.2d 478. In view of the repetition of the instruction in immediate response to the specific request of the jury relating to the critical point, the error in omitting from it the element of wilfulness as a constituent ingredient of the offense cannot be treated as having no prejudicial consequence. It perhaps was decisive in its effect upon the jury.

The remaining contention which merits consideration is that the court improvidently directed certain critical comments or remarks to the assistant manager of the company. The assistant manager was the only witness who testified in behalf of the company. At one point while he was testifying the court stated to him that he had dodged all around a certain question and that the court wanted him to answer it. At another point, the court stated that it did not want him fencing with counsel. And at a third juncture, the court stated that he had not been frank; that he was fencing and dodging and ducking and trying to find some other explanation; and that the court wanted him to answer the question fairly and squarely. We fail to find anything in the record indicating such an attitude on the part of the witness. The trial court is not a mere moderator. The court has the power and is charged with the duty of directing the trial along paths of recognized procedure in a manner reasonably calculated to bring about a just result. And within the range of that power and duty, the court may make non-prejudicial comments or remarks from time to time. Smith v. Welch, 10 Cir., 189 F.2d 832. The challenged comments or remarks of the court were questionable, but we are content to assume that they will not recur on the subsequent trial.

The judgment is reversed and the cause remanded.

MURRAH, Circuit Judge, would affirm the judgment.